IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEMETRIOUS DARRON FLEMING, FR-3830,<br>    Petitioner, | )<br>)<br>) |
| v. | ) 2:11-cv-617<br>) |
| JOSEPH F. MAZURKIEWICZ, JR., et al.,<br>    Respondents. | )<br>)<br>) |

REPORT and RECOMMENDATION

I.  Recommendation:

It is respectfully recommended that the petition of Demetrious Darron Fleming for a writ of habeas corpus be dismissed, and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied. It is also recommended that Fleming's Motion for Summary Judgment (Docket No. 15) be dismissed as moot.

II.  Report:

Demetrious Darron Fleming, an inmate at the State Correctional Institution at Greensburg has presents a petition for a writ of habeas corpus which he has been granted leave to prosecute in forma pauperis.

Fleming is presently serving an eighteen to forty year sentence imposed following his conviction, upon a negotiated plea of guilty, to charges of third degree homicide, firearms act violations and driving under the influence at No. CP-02-CR-1179-2003 in the Court of Common Pleas of Allegheny County, Pennsylvania. This sentence was imposed on February 3, 2004.[1] On July 20, 2004, post-sentence motions were denied and a notice of appeal was filed on August 11, 2004.[2] The sole question presented to the Superior Court was:

> Is a defendant's plea entered unknowingly and involuntarily when his attorneys confirmed that they had made "representations" that he would receive a certain

---

[1] See: Petition at ¶¶1-6.
[2] See: Answer of the Commonwealth at p.296. All references to the answer of the Commonwealth are to the "Bates" pagination.

1

much shorter sentence and this occurred mid-trial with only several hectic minutes for the defendant to digest this and to make a decision?[3]

On June 13, 2006, the judgment of sentence was affirmed.[4] A petition for allowance of appeal to the Pennsylvania Supreme Court was filed raising this same issue, and on November 21, 2006, the petition was denied.[5]

On April 8, 2007, Fleming filed a post-conviction petition.[6] That petition was denied on September 11, 2008.[7] No appeal was pursued, however, on October 30, 2009, the petitioner's appeal rights were reinstated.[8]

An appeal was filed in which the question presented was:

Did the trial court err in denying appellant's PCRA petition without a hearing since trial counsel Whiteford-Robertson and Scoratow were ineffective for improperly inducing appellant to abandon his clear desire to proceed to trial, and instead plead guilty to third-degree murder, based upon their false misrepresentations to appellant that if he pled he would receive a specific sentence of 4-8 years, 5-10 years imprisonment, or possibly 6.50-13 years, which was 13-30 years less than the actual sentence imposed? Furthermore, was trial counsel Whiteford-Robertson ineffective for failing to mention the 4-8 year promise when she testified at the post sentencing motion hearing?[9]

On June 3, 2010, the denial of post-conviction relief was affirmed.[10] On May 10, 2011, leave to appeal to the Pennsylvania Supreme Court was denied.[11]

In the instant petition, executed on May 10, 2011, Fleming contends he is entitled to relief on the grounds that:

Trial counsel was ineffective for unlawfully inducing petition to plead guilty with the mistaken belief that there were some sort of clandestine agreement with the trial court of a specific sentence.

It is provided in 28 U.S.C. §2254(b) that:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State,

---

[3] See: Answer at p.323.
[4] See: Answer at pp.394-403.
[5] See: Answer at pp.415, 459.
[6] See: Answer at p.460.
[7] See: Answer at p.520.
[8] See: Answer at pp.582-585.
[9] See: Answer at p.616.
[10] See: Answer at pp.692-702.
[11] See: Answer at p.765.

or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

3

> We must thus decide whether the state supreme court's "adjudication of the claim ... resulted in a decision that was *contrary to*, or involved *an unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States...
>
> A state court adjudication is "contrary to" Supreme Court precedent if it results from the application of "a rule that contradicts the governing law set forth" by the Supreme Court or is inconsistent with Supreme Court decision in a case involving "materially indistinguishable" facts ... "A state court decision fails the 'unreasonable application' prong only 'if the court identifies the correct governing rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case or if the state court either unreasonably extends a legal principle from the Supreme court's precedent to a new context where it should not apply or unreasonably refuses to extend the principle to a new context where it should apply...(citations omitted).

That is, the state court determination must be objectively unreasonable. Renico v. Lett, 130 S.Ct. 1855 (2010).

In the instant case, it is readily apparent that the petitioner here seeks to challenge the voluntary and knowing entry of his plea with the assistance of competent counsel. This issue was raised in the state courts in both Fleming's direct appeal and post-conviction appeal and for this reason is properly before this Court.[12] Thus, the question is whether or not the petitioner's plea comported with federal standards.

The background to the prosecution is set forth in the Superior Court's June 13, 2006 Memorandum:

> On November 24, 2001, police responded to a traffic accident where one of the drivers involved had fled the scene. Police observed Appellant's car nearby driving with two flat tires. Police pulled the vehicle over and detected the smell of alcohol on Appellant's breath. At the time, Appellant was nineteen years old and had a blood-alcohol content of .119. A subsequent search of Appellant's car revealed open containers of alcohol and two loaded firearms with altered serial numbers.
>
> On November 16, 2002, police again arrested Appellant, this time for possession of a firearm and possession of a firearm with an altered or removed serial number.

---

[12] We do note that in addition to presenting the same issue to the state courts, the latter must also be put on notice that a federal claim is being raised. Greene v.Palakovich, 606 F.3d 85,93 (3d Cir.2010). While the petitioner's briefs to the Pennsylvania appellate courts made very little reference to federal law, pp. 318,613, those reference demonstrate that the claim was raised in a generally identical context as in federal cases i.e. that his plea was not knowingly and voluntarily entered, and for this reason the claim will be considered here. 28 U.S.C. §2254(b)(2).

On December 19, 2002, a man named Marvin Housch was involved in an argument with an unidentified man outside his Pittsburgh apartment building. The argument escalated and the unidentified man shot Mr. Housch six times at close range and fled. Paramedics pronounced him dead at the scene. On February 5, 2003, after a police investigation, Appellant was arrested for Mr. Housch's death.

As a result of the November 24, 2001, incident, Appellant was charged on June 28, 2002, under Information 200206863, with one count of altering or obliterating marks or identification, one count of violation of the Uniform Firearms Act (VUFA), possession of firearm by minor, three counts of violating the vehicle code, driving under the influence of alcohol or controlled substance and one summary count of purchase, consumption, possession or transportation of liquor or malt or brewed beverages.

As a result of the November 16, 2002, incident, Appellant was charged on September 23, 2004 under Information 200309253, with one count of carrying a firearm without a license and one count of possession of a firearm with an altered manufacturer's number.

As a result of the December 19, 2002, incident, Appellant was charged on April 8, 2003, under Information 200301179, with one count of criminal homicide.

On November 12, 2003, Appellant's jury trial for criminal homicide began. The trials relating to the other charges were postponed pending the outcome of Appellant's homicide trial. The following day, Appellant and the Commonwealth reached an open plea agreement that required Appellant to plead guilty to one count of third-degree murder. Appellant entered the required plea after an oral colloquy was conducted on the record, no agreement was reached regarding the minimum sentence except that a five year minimum was required because a firearm was used. Also, the trial court agreed to sentence Appellant to concurrent sentences regarding the other two Informations…[13]

In <u>Bradshaw v.Stumpf</u>, 545 U.S. 175, 183 (2005), the Court held that "a guilty plea … is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences'" (internal citation omitted). Additionally, a petitioner may not contradict statements made during the plea colloquy in order to secure relief. <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977).

In the instant case, after trial had commenced, the court was notified of the petitioner's desire to change his plea, and as a result a colloquy was conducted. The court determined that the petitioner was able to read, write and understand English and that he

---

[13] See: Answer at pp.394-396, footnotes omitted.

understood the charges (TT.11/13/03 pp.4-5). At that hearing the attorney for the Commonwealth with the concurrence of the petitioner and his attorney set forth the terms of the plea agreement which was that the petitioner would plead guilty to third degree murder; that no sentencing had been agreed upon other than that the court was required to imposed the mandatory five year sentence for the use of a deadly weapon; that the Commonwealth had specifically rejected any specific period for the minimum sentence and would only agree to an open plea to the charge of third degree homicide; that the severity of the sentence would be left to the discretion of the court; that that the sentences on all the other charges would be concurrent with the homicide sentence and that no other promises had been made in exchange for the plea (TT. 11/13/03 pp. 6-10). The petitioner also stated that he was entering the plea because he was in fact guilty (TT.11/13/03 p.11).

At the sentencing hearing held on February 3, 2004, the petitioner was advised that he had ten days for file post-sentence motions (TT.2/3/04 p.17).

At the post-sentencing hearing held on July 2, 2004, the petitioner testified that he believed that both the prosecution and the court had agreed that he would receive a five to ten year sentence (TT.7/2/04 pp.5,7-8,10,25,28) that on the day prior to entering his plea he learned that the judge did not concur in a five to ten year sentence (TT.7/2/04 p.10); that he had been informed that concurrent sentences would be imposed (TT.7/12/04 p.12) and that his responses at the plea hearing were untrue (TT.7/12/04 p.19).

One of the petitioner's defense counsel testified at the post-sentencing hearing that if convicted at trial the petitioner was facing a sentence of life without parole (TT.7/12/04 p.47); that although there was discussion of a possible 60 to 78 month sentence, the petitioner had been informed that he was entering an open plea[14] and not one in which the sentence was agreed upon (TT.7/12/04 pp.50-51. 54, 56); that she never informed the petitioner that he could be sentenced to twenty to forty years (TT.7/12/04 p.60); that the trial court had explained the maximum possible penalty and the petitioner was never advised that he would receive a sixty month sentence (TT.7/12/04 pp.64,68) and that her understanding was that the plea was an open plea, that is that there was no agreement on the length of the sentence to be imposed (TT.7/12/04 p.69).

---

[14] "An open plea agreement is one in which there is no negotiated sentence." Commonwealth v. Tirado, 870 A.2d 362, 363, n.1 (Pa.Super.2005).

6

Co-defense counsel testified that he believed a plea to third degree homicide was good for the petitioner because it avoided the possibility of a life sentence (TT.7/12/04 p.93), and that he had advised the petitioner that he *believed* that the likely sentence would be 78 months (TT.7/12/04 p.81-82).

Under the applicable federal law, it cannot be said that Fleming's plea was not knowingly and voluntarily entered with full awareness of the consequences of his action. That he might have hoped for a more favorable result is immaterial here since the record clearly demonstrates that the petitioner was fully aware that no promises as to sentence had been made.

In addition, the petitioner contends that counsel was ineffective as a result of representations made to him that a lesser sentence would be imposed. In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to the effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Rainey v. Varner, 603 F.3d 189,197 (3d Cir.2010). As a result, if a petitioner fails on either prong, he loses. Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006).

The record here clearly refutes the petitioner's allegations. At best counsel had expressed an educated guess as to what the sentence might be, but at no time was the petitioner informed as to any agreement on sentence. Rather any sentence agreement had been specifically rejected by the Commonwealth which would only accept an open plea.

7

Accordingly, it cannot be concluded that counsels' performance was constitutionally deficient since the record reflects that counsel made a strategic decision to support the plea to third degree murder in order to avoid the possibility of a life sentence if convicted on the more severe charges.

Because the record clearly demonstrates that petitioner's plea was entered in a manner not inconsistent with federal law as determined by the Supreme Court, Fleming's claims here do not provide any basis for relief.

Accordingly, it is recommended that the petition of Demetrious Darron Fleming for a writ of habeas corpus be dismissed, and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied. It is further recommended that Fleming's Motion for Summary Judgment be dismissed as moot.

Any litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections within fourteen (14) days of this date. Failure to do so will waive the right to appeal.

Filed: July 29, 2011                           Respectfully submitted,

                                                                                 s/ Robert C. Mitchell
                                                                                 United States Magistrate Judge